UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**MDD_CDAChambers@mdd.uscourts.gov**

March 31, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Lenora J. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
      Civil No. 24-0960-CDA

Dear Counsel:

On April 2, 2024, Plaintiff Lenora J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 15, 2020, alleging a disability onset of August 31, 2014. Tr. 326-27. Plaintiff's claims were denied initially and on reconsideration. Tr. 59-74. On November 10, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 33-57. Following the hearing, on March 2, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 96-109. The Appeals Council granted Plaintiff's request for review of the decision, vacated the decision, and remanded the case to an ALJ. Tr. 115-20. On April 25, 2023, the ALJ held a second hearing. Tr. 14-32. On August 3, 2023, the ALJ determined that Plaintiff was not disabled. Tr. 121-36. The Appeals Council denied Plaintiff's request for review of the August 3, 2023, decision, Tr. 1-3, so that decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on April 2, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Lenora J. v. Dudek*
Civil No. 24-0960-CDA
March 31, 2025
Page 2

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of August 31, 2014 through her date last insured of December 31, 2018." Tr. 127. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity, fibromyalgia, major depressive disorder, anxiety, degenerative disk disease, and post-traumatic stress disorder ('PTSD')." Tr. 127. The ALJ did not find that Plaintiff suffered from any non-severe impairments. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 127. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, crouch, and never crawl. She could never be exposed to unprotected heights or moving mechanical parts. She could have occasional exposure to extreme cold, and perform no jobs that require exposure to vibration. She is able to perform simple, routine tasks. She could perform work with that does not require a specific production rate, such as assembly line work or work that requires hourly quotas. She could perform jobs in a low-stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting. She could have occasional interaction with co-workers, with the public, and with supervisors.

Tr. 130. The ALJ determined that Plaintiff was unable to perform past relevant work as a nursing assistant (DOT[3] #355.674-014) and a janitor (DOT #323.687-010) but could perform other jobs

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor,

Lenora J. v. Dudek
Civil No. 24-0960-CDA
March 31, 2025
Page 3

that existed in significant numbers in the national economy. Tr. 134. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 135-36.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

On appeal, Plaintiff argues that the ALJ's "fundamental misunderstanding of fibromyalgia," and failure to properly evaluate Plaintiff's severe fibromyalgia renders the ALJ's decision unsupported by substantial evidence. ECF 11, at 7-18; ECF 14, at 1-5. Specifically, Plaintiff asserts that the ALJ "impermissibly dismiss[ed] Plaintiff's statements regarding the intensity, persistence and limiting effects of her severe fibromyalgia[,]" by relying "on objective medical evidence, specifically physical examination findings, that are unrelated to fibromyalgia." ECF 11, at 12. Defendant counters that "the ALJ properly evaluated Plaintiff's fibromyalgia and did not improperly rely on objective evidence in contravention of *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020)." ECF 13, at 5-10.

An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas*, 983 F.3d at 97. In *Arakas*, the ALJ "discredited [the claimant's] statements about the severity, persistence, and limiting effects" of her fibromyalgia symptoms "because [the ALJ] did not find [the symptoms] to be 'completely consistent with the objective evidence.'" *Id.* at 96. Because the claimant "was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,'" the Fourth Circuit held that the ALJ "applied an incorrect legal standard" by discrediting the claimant's complaints "based on the lack of objective evidence corroborating them." *Id.* (brackets in original). The court further concluded that the ALJ "'improperly increased [the claimant's]

---

*Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (citation omitted).

Here, the ALJ determined Plaintiff's fibromyalgia to be a medically determinable and severe impairment. Tr. 127. The ALJ observed that Plaintiff "has the following qualifying fibromyalgia symptoms: fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, poor sleep, and anxiety." Tr. 127. In assessing RFC, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 131. The ALJ found that "[t]he medical evidence of record from the alleged onset date through the date last insured is inconsistent with disabling functional limitations." Tr. 131. The ALJ made only one narrative reference to fibromyalgia in the RFC assessment:

> Pain management records, dated June 2018 to February 2019, describe tenderness in the lumbar and thoracic spine associated with a diagnosis of low back pain. The claimant did not require surgery or invasive treatment for her back pain. Rather, her pain was conservatively managed with branch block injections and pain medications, such as Lyrica and Topamax. Notably, treatment records show full to moderately decreased range of motion with pain. Similarly, the claimant's fibromyalgia was managed by pain management and rheumatology. Despite reports of bodily pain, the claimant exhibited full range of motion and strength and no gross deformity of the extremities. Notably, the claimant's BMI fluctuated between 26 and 32 during the relevant period.

Tr. 131 (internal citations omitted). The ALJ limited Plaintiff "to sedentary work with postural limitations due to fibromyalgia and bodily pain[,]" and further determined that Plaintiff's "fibromyalgia also warrants environmental limitations." Tr. 132.

Plaintiff takes issue with the ALJ's explanation that "[d]espite reports of bodily pain, [Plaintiff] exhibited full range of motion and strength and no gross deformity of the extremities." Tr. 131. Plaintiff contends that this statement "belies the fact that [the ALJ] took Plaintiff's severe fibromyalgia seriously." ECF 11, at 12. Plaintiff asserts that "it remains unclear how 'full range of motion and strength and no gross deformity of the extremities' undermines Plaintiff's statements." *Id.*, at 12-13. Plaintiff argues that the ALJ's reliance on objective evidence when assessing the credibility of Plaintiff's subjective complaints is impermissible and necessitates remand. *Id.*, at 13-17.

Additionally, Plaintiff took issue with the ALJ's statement that "[s]pecifically of note in assessing the above capacity [is] . . . the claimant's treatment history, which has remained relatively conservative throughout the alleged disability period." *Id.*, at 17 (citing Tr. 133). The ALJ noted elsewhere in their decision that Plaintiff's "fibromyalgia was managed by pain management and rheumatology." Tr. 131. Plaintiff asserts that "the ALJ's expectation that an

individual with Plaintiff's alleged symptoms would require anything but 'conservative' treatment" reflected the "ALJ's [pervasive] misunderstanding of fibromyalgia." ECF 11, at 17.

Governed by *Arakas*, the Court agrees that the ALJ's evaluation of Plaintiff's fibromyalgia warrants remand. "[P]hysical examinations [of patients with fibromyalgia] will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Arakas*, 983 F.3d at 96 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003)). In *Arakas*, the Fourth Circuit held that the ALJ erred when they relied principally on objective results such as a "full range of motion" or "lack of joint inflammation" when discounting the claimant's complaints as inconsistent with the objective evidence. *Id.*; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

Here, the ALJ contravened *Arakas* when they relied on objective evidence to find Plaintiff's symptoms as inconsistent. "[T]rigger points," which *Arakas* defines as "tenderness in specific sites on the body," are "the only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 97. Apart from trigger-point evidence, objective evidence has "no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id.* An ALJ therefore errs by discrediting a claimant's fibromyalgia symptoms based upon a lack of objective evidence to corroborate the symptoms. *See id.* at 98. If an ALJ *does* consider objective evidence in relation to fibromyalgia, that evidence "should be treated as evidence *substantiating*" a claimant's fibromyalgia symptoms. *Id.* at 97-98 (emphasis in original). Thus, the ALJ's discrediting of Plaintiff's symptoms merely by her examinations exhibiting full range of motion and strength and no gross deformity of the extremities contravenes *Arakas*.

Notably, the ALJ in this case found that Plaintiff had other medically determinable impairments that, unlike fibromyalgia, may produce objective evidence of their effects. *See* Tr. 127 (determining that Plaintiff suffered from other severe physical impairments, including obesity and degenerative disk disease). Although the ALJ stated "there is no evidence of other disorders that might cause the [Plaintiff's fibromyalgia-related] symptoms," Tr. 127, when the ALJ determined that objective evidence was inconsistent with Plaintiff's alleged symptoms in assessing RFC, the ALJ drew no explicit distinction between Plaintiff's fibromyalgia-related allegations and her allegations concerning other impairments. *See* Tr. 131-33. This lack of precision leaves the Court unable to determine whether the ALJ's discussion of Plaintiff's full range of motion and strength and no gross deformity of the extremities was intended to refer to a different impairment because the ALJ discussed objective findings within the same paragraph referencing Plaintiff's fibromyalgia. *See Richard B. v. Kijakazi*, No. BAH-22-3193, 2023 WL 5938763, at *3 n.5 (D. Md. Sept. 12, 2023) (remanding where the ALJ "discussed objective findings within the same paragraph referencing [p]laintiff's fibromyalgia," which left the Court unable to "infer that the ALJ's discussion . . . was intended to pertain to a different impairment that does produce objective evidence").

Moreover, the ALJ discussed Plaintiff's conservative treatment and normal physical examinations in the context of her RFC. In assessing RFC, the ALJ discussed Plaintiff's normal physical examinations, including full range of motion and strength and no gross deformity of the extremities, and her conservative treatment, which suggests the ALJ viewed those facts as mitigating Plaintiff's subjective complaints about her fibromyalgia. *See* Tr. 131-33. Plaintiff "cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'" *Arakas*, 983 F.3d at 102 (citing *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)); *see Leniya S. v. Saul*, No. DLB-19-2990, 2021 WL 1224067, at *2-3 (D. Md. Mar. 31, 2021) (remanding where "the ALJ juxtaposed plaintiff's 'conservative treatment' with her normal physical examination findings," and where "the ALJ impermissibly used objective evidence to discount plaintiff's complaints.").

Because Plaintiff was "entitled to rely exclusively on subjective evidence to prove" that her symptoms were "so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight-hour day," the ALJ "applied an incorrect legal standard" in discrediting her complaints based on the lack of objective evidence corroborating them. *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006). Thus, the ALJ "improperly increased [Plaintiff's] burden of proof" by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *see, e.g.*, *Michelle P. v. Saul*, No. TMD-19-3499, 2021 WL 119076, at *4-5 (D. Md. Jan. 12, 2021) (remanding where the ALJ found the plaintiff's fibromyalgia severe but noted that "testing in the record showed normal gait and no neurological defects" and "spinal imaging did not show significant abnormalities"); *Charlene L. v. Saul*, No. 3:19cv626, 2021 WL 725822, at *4-6 (E.D. Va. Feb. 3, 2021) (remanding where the ALJ improperly considered plaintiff's fibromyalgia by finding the plaintiff experienced pain but noting "the treatment notes show[ed] an improvement in joint pain due to conservative treatment" and "other physical examinations show a normal range of hip and knee motion as well as other joints, normal sensation and strength in the bilateral extremities and no joint tenderness"). Thus, remand is proper. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

### V.     **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Case 1:24-cv-00960-CDA   Document 15   Filed 03/31/25   Page 7 of 7

*Lenora J. v. Dudek*
Civil No. 24-0960-CDA
March 31, 2025
Page 7

                              Charles D. Austin
                              United States Magistrate Judge